John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
SNYDER, POST & BURGESS
1000 SW Broadway, Suite 2400
Portland, OR 97205
Tel: (971) 442-9303
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NAN L. BUCKNELL, Personal Representative of the Estate of Benjamin Bucknell, | Case No. 6:26-cv-1316 |
| Plaintiff, | **COMPLAINT** |
| v. | 42 U.S.C. § 1983 Civil Rights Action: Eighth Amendment Deliberate Indifference to Serious Mental-Health Needs and Substantial Risk of Suicide; Eighth Amendment Unconstitutional Conditions of Confinement |
| JOSHUA HIGHBERGER; JEREMY WAGNER; PATRICK MULLEN; STEVEN BENNETT; TYLER WINEGAR; MONTE MCBETH; SERGEANT GEE; JAMES SHAFFER; KRISTINE GATES; TRACY MEYER; JOHN/JANE DOE DSU OFFICERS 1-10; JOHN/JANE DOE BEHAVIORAL HEALTH PROVIDERS 1-10; and JOHN/JANE DOE SUPERVISORS 1-10, | **JURY TRIAL DEMANDED** |
| Defendants. | |

PAGE 1 – COMPLAINT

**INTRODUCTION**

1.      This civil rights action arises from the death of Benjamin Leland Bucknell, who died by suicide while he was housed in the Disciplinary Segregation Unit (DSU) at Oregon State Correctional Institution (OSCI).

2.      While Benjamin was confined in segregation, Defendants were responsible for his safety, supervision, mental-health access, and protection from known and obvious risks of self-harm. Defendants knew that people confined in segregation face heightened risks of psychological deterioration and suicide, and that obstructed cell visibility, inadequate checks, and requests for mental-health care require prompt intervention.

3.      Defendants failed to take reasonable and constitutionally required measures to protect Benjamin. They failed to ensure timely mental-health intervention, failed to place him on appropriate suicide precautions, failed to maintain adequate observation, failed to respond to obstructed cell visibility, and failed to conduct adequate security checks.

4.      As a result, Benjamin was left unprotected in his segregation cell and was able to hang himself. He suffered catastrophic injury and was later pronounced dead.

5.      Plaintiff Nan L. Bucknell, as Personal Representative of the Estate of Benjamin Leland Bucknell, brings this action under 42 U.S.C. § 1983 for violations of Benjamin's rights under the Eighth Amendment to the United States Constitution.

**JURISDICTION & VENUE**

6.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under the Constitution and laws of the United States.

7.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

PAGE 2 – COMPLAINT

8. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Oregon, and all Defendants reside or are employed in Oregon.

## PARTIES

9. Plaintiff Nan L. Bucknell is the duly appointed Personal Representative of the Estate of Benjamin Leland Bucknell. Plaintiff brings this action on behalf of the Estate of Benjamin Leland Bucknell and all persons entitled to recover for his death under Oregon law.

10. Decedent Benjamin Leland Bucknell was, at all relevant times, a prisoner of the Oregon Department of Corrections. At the time of the events described in this Complaint, Benjamin was incarcerated at OSCI. On June 27, 2024, Benjamin attempted suicide while confined in cell DS-30B in OSCI's Disciplinary Segregation Unit. He died on July 1, 2024.

11. At all relevant times, the individual Defendants were employees, agents, or officials of the State of Oregon and the Oregon Department of Corrections. They acted under color of state law and within the course and scope of their employment, duties, and authority.

12. Defendant Joshua Highberger was, at all relevant times, the Superintendent of OSCI. Defendant Highberger was responsible for the operation, supervision, staffing, safety, and security of OSCI, including policies, practices, training, and supervision concerning disciplinary segregation, suicide prevention, mental-health access, security checks, visibility into segregation cells, removal of self-harm hazards, and protection of prisoners from known risks of suicide and self-harm.

13. Defendant Jeremy Wagner was, at all relevant times, the Assistant Superintendent of Security at OSCI and a senior security official responsible for security operations at OSCI, including DSU. Defendant Wagner was responsible for ensuring that DSU was safely operated,

PAGE 3 – COMPLAINT

adequately staffed, and supervised; that DSU staff conducted required checks; that staff responded to obstructed cell windows, blocked visibility, papered-over windows, blocked doors, and other warning signs of self-harm; and that prisoners in segregation had access to necessary mental-health intervention.

14.    Defendant Patrick Mullen was, at all relevant times, the Institution Security Manager at OSCI. Defendant Mullen was responsible for security operations at OSCI, including the supervision, monitoring, and safe operation of DSU. Defendant Mullen was responsible for ensuring that correctional staff conducted and accurately documented required security checks, maintained visibility into segregation cells, addressed violations of DSU safety rules, responded to signs of suicide risk, and protected prisoners from known risks of self-harm.

15.    Defendant Lieutenant Steven D. Bennett was, at all relevant times, employed by ODOC at OSCI. On June 27, 2024, Defendant Bennett was assigned as the Special Housing Supervisor. Defendant Bennett was responsible for the supervision and safe operation of special housing, including DSU, and for ensuring that prisoners housed in segregation were adequately monitored, that required checks were performed, that cell windows and doors remained sufficiently visible and unobstructed, that suicide hazards were addressed, and that prisoners in crisis received timely mental-health intervention.

16.    Defendant Officer Tyler A. Winegar was, at all relevant times, a correctional officer employed by ODOC at OSCI and assigned to DSU. On June 27, 2024, Defendant Winegar was responsible for conducting tier checks and monitoring prisoners housed in DSU. Defendant Winegar was responsible for observing and responding to obvious signs of distress, self-harm risk, obstructed cell visibility, papered-over windows or doors, accumulated materials, and other conditions that created or indicated a substantial risk of suicide.

PAGE 4 – COMPLAINT

17.    Defendant Sergeant Monte McBeth was, at all relevant times, employed by ODOC at OSCI. Defendant McBeth worked in, supervised, or was responsible for DSU during the relevant period. Defendant McBeth was responsible for ensuring that required DSU checks were actually conducted and accurately documented, that staff maintained visibility into cells, that safety violations such as papered-over windows, blocked windows, blocked cell fronts, or obstructed doors were corrected, and that prisoners showing signs of self-harm risk were referred for appropriate intervention and protection.

18.    Defendant Sergeant Gee aka Mr. G was, at all relevant times, employed by ODOC at OSCI. Defendant Sergeant Gee worked in, supervised, or was responsible for DSU during the relevant period. Defendant Sergeant Gee was responsible for ensuring that required DSU checks were actually conducted and accurately documented, that staff maintained visibility into cells, that safety violations such as papered-over windows, blocked windows, blocked cell fronts, or obstructed doors were corrected, and that prisoners showing signs of self-harm risk were referred for appropriate intervention and protection.

19.    Defendant Officer James Shaffer aka Jay Shaffer was, at all relevant times, employed by ODOC at OSCI. Defendant Shaffer interacted with Benjamin on June 27, 2024, after Benjamin's disciplinary hearing and before Benjamin attempted suicide. Defendant Shaffer knew, or should have known, that Benjamin was visibly distraught, emotionally decompensating, and requesting mental-health assistance. Defendant Shaffer failed to ensure that Benjamin received timely Behavioral Health Services (BHS) intervention, suicide-risk assessment, or protective precautions before Benjamin was returned to or left in DSU.

20.    Defendant BHS Manager Kristine Gates nka Kristine Tschopp was, at all relevant times, an ODOC BHS employee, manager, or supervisor at OSCI. Defendant BHS Manager

PAGE 5 – COMPLAINT

Gates knew Benjamin, knew or should have known his mental-health history, and knew or should have known that he was at heightened risk of psychological deterioration and self-harm while confined in disciplinary segregation. Defendant BHS Manager Gates failed to provide timely mental-health evaluation, failed to ensure continuity of care, failed to respond reasonably to requests or warnings that Benjamin needed help, and failed to ensure that other BHS staff were authorized and available to assist him.

21.    Defendant BHS Employee Tracy Meyer was, at all relevant times, an ODOC BHS employee at OSCI. Defendant Meyer knew that Benjamin was seeking mental-health assistance and knew, or should have known, that Benjamin was psychologically deteriorating while in ODOC custody. Defendant Meyer failed to provide timely care, failed to escalate Benjamin's need for intervention, and failed to ensure that Benjamin received adequate mental-health assessment, treatment, or suicide-risk precautions.

22.    Defendant John/Jane Doe DSU Officers 1-10 were, at all relevant times, correctional officers, sergeants, or supervisors employed by ODOC at OSCI and assigned to or responsible for DSU. These Defendants were responsible for conducting required security checks, accurately documenting those checks, maintaining visibility into segregation cells, correcting papered-over or obstructed cell windows or doors, removing or limiting materials that could be used to obstruct staff observation or facilitate self-harm, and responding to obvious signs of suicide risk. These Defendants failed to take reasonable and constitutionally required steps to protect Benjamin from self-harm.

23.    Defendant John/Jane Doe Behavioral Health Providers 1-10 were, at all relevant times, mental-health employees, supervisors, or providers employed by ODOC at OSCI. These Defendants were responsible for responding to requests for BHS, assessing suicide risk,

PAGE 6 – COMPLAINT

providing mental-health care, ensuring continuity of care, and communicating suicide-risk information to correctional staff and supervisors. These Defendants failed to provide Benjamin with timely and adequate mental-health care and failed to take reasonable steps to protect him from a known and substantial risk of suicide.

24.     Defendant John/Jane Doe Supervisors 1-10 were, at all relevant times, ODOC supervisors, managers, or policymakers responsible for staffing, training, supervision, policies, and practices at OSCI and DSU. These Defendants were responsible for ensuring that DSU staff complied with suicide-prevention policies, conducted required checks, responded to obstructed visibility and other cell-safety violations, and ensured access to mental-health care for prisoners in crisis. These Defendants failed to train, supervise, and discipline staff adequately and allowed unsafe customs and practices to persist in DSU.

25.     Plaintiff does not yet know the true names and capacities of all Doe Defendants. Plaintiff will amend this Complaint to identify additional Defendants when their names, roles, and responsibilities are learned through discovery.

## FACTUAL ALLEGATIONS

26.     Benjamin Leland Bucknell was a 29-year-old man incarcerated at Oregon State Correctional Institution and housed in the custody and control of the Oregon Department of Corrections. While incarcerated, Benjamin depended entirely on ODOC and its employees for his safety, security, medical care, mental-health care, and protection from self-harm.

27.     Benjamin had a known mental-health history at OSCI. BHS staff knew Benjamin, knew his history, and knew that he was vulnerable to psychological deterioration when isolated, distressed, or placed in disciplinary segregation. Correctional staff and BHS staff also knew that

PAGE 7 – COMPLAINT

people housed in segregation are at increased risk of suicide and self-harm and require careful observation, access to mental-health care, and prompt response to warning signs.

28. In June 2024, Benjamin was placed in OSCI's DSU. DSU is an isolating and restrictive environment. Prisoners housed in DSU are locked in segregation cells and depend on correctional staff to conduct required checks, maintain visibility into cells, enforce safety rules, identify warning signs, and obtain medical or mental-health assistance when needed.

29. ODOC policy, training, and basic correctional practice require staff to maintain visibility into segregation cells. Prisoners are not permitted to paper over, cover, or obstruct cell windows. Covered windows, obstructed cell fronts, blocked doors, accumulated paper, crying, agitation, withdrawal, and requests for mental-health care are obvious warning signs that require intervention, particularly for a person housed in segregation.

30. In the days before his suicide attempt, Benjamin displayed signs of psychological distress and decompensation. He sought mental-health help from ODOC staff and BHS. Rather than ensuring that Benjamin received timely evaluation, treatment, suicide-risk assessment, or protective intervention, Defendants passed responsibility from one person to another and failed to treat his need for mental-health care as urgent.

31. On June 27, 2024, Benjamin attended a disciplinary hearing while housed in DSU. After the hearing, Benjamin was visibly distraught, crying, and emotionally decompensating. Benjamin asked to speak with BHS. Defendant Officer James "Jay" Shaffer and other ODOC employees knew that Benjamin needed immediate mental-health intervention but failed to ensure that he was evaluated by BHS, placed on suicide precautions, moved to a safer cell, or subjected to enhanced observation before he was returned to or left alone in DSU.

PAGE 8 – COMPLAINT

32.     After Benjamin returned to DSU, Defendants left him alone in cell DS-30B without adequate protection, monitoring, or mental-health intervention. Defendants did not place him on suicide watch. Defendants did not move him to a camera-monitored cell or other safer location. Defendants did not remove or restrict materials that could be used to obstruct staff observation or facilitate self-harm. Defendants did not ensure that he received a timely suicide-risk assessment or crisis intervention.

33.     Benjamin had access to newspapers or similar paper materials while housed in DSU. Benjamin accumulated paper materials in his cell and used those materials to obstruct visibility into his cell, including by covering or papering over the cell window. Benjamin also used wet paper or similar materials to obstruct the area around the cell door, making entry into the cell more difficult.

34.     These conditions violated ODOC policy and created an obvious risk of serious harm. A papered-over or obstructed cell window prevents staff from confirming that a person in segregation is alive, breathing, responsive, and safe. Accumulated paper and an obstructed cell front in DSU are also obvious warning signs that a person may be preparing to harm himself or prevent staff from observing him.

35.     Defendants failed to respond to these obvious dangers. They failed to remove the paper and other materials from Benjamin's cell, failed to ensure that his cell window remained unobstructed, failed to ensure that staff could adequately observe him, failed to conduct adequate checks, failed to summon BHS for urgent evaluation, and failed to move Benjamin to a safer setting.

36.     Defendants Sergeant McBeth and Sergeant Gee worked in, supervised, or were responsible for DSU during the relevant period. They were responsible for ensuring that required

DSU checks were actually conducted and accurately documented, that staff maintained visibility into cells, that papered-over windows and obstructed cell fronts were corrected, and that prisoners showing signs of self-harm risk were referred for appropriate intervention and protection.

37.    Defendant McBeth, Defendant Gee, and other DSU staff failed to conduct required checks of Benjamin's cell during the relevant period before he was found hanging. They falsely documented, inaccurately documented, or permitted inaccurate documentation of DSU checks. Their failure to conduct and accurately document required checks allowed Benjamin to remain unobserved long enough to prepare for and carry out a suicide attempt.

38.    Supervisory Defendants knew that DSU presented serious suicide risks and that staff were required to conduct regular checks, maintain unobstructed visibility, and respond immediately to covered windows and other cell-safety violations. Despite that knowledge, supervisory Defendants failed to train, supervise, discipline, and manage DSU staff in a manner sufficient to ensure compliance with basic suicide-prevention and segregation-safety requirements.

39.    At approximately 12:52 p.m. on June 27, 2024, Defendant Officer Tyler Winegar was conducting a tier check in DSU when he approached Benjamin's cell, DS-30B. Defendant Winegar discovered Benjamin hanging by the neck inside the cell and called for medical and A-Team responders.

40.    Staff opened the cell, and Defendant Officer Kristopher Luna used a cut-down tool to cut the material by which Benjamin was hanging. Staff removed Benjamin from the cell and placed him on the tier. Benjamin was ashen, limp, pulseless, not breathing, and unresponsive.

PAGE 10 – COMPLAINT

41.    Corporal Steven Weltz began CPR. Medical staff arrived at approximately 12:54 p.m., and 911 was activated. Defendant Lieutenant Steven Bennett took over incident command at approximately 12:56 p.m. Emergency medical responders arrived in DSU at approximately 1:03 p.m., took over Benjamin's care, and transported him from DSU by ambulance at approximately 1:11 p.m.

42.    After the incident, Defendant Bennett prepared a report. The report showed that the prior documented tier check had occurred approximately 22 minutes before Defendant Winegar found Benjamin hanging.

43.    A 22-minute gap between checks was dangerous and unreasonable under the circumstances. The gap was especially dangerous because Benjamin was housed in DSU, had displayed signs of emotional distress, had requested or needed mental-health care, and had access to materials that could be used to obstruct staff observation or facilitate self-harm.

44.    Defendants had multiple opportunities to prevent Benjamin's suicide attempt. They could have provided timely BHS intervention. They could have placed him on suicide watch. They could have moved him to a safer cell. They could have removed the paper and other materials from his cell. They could have required his cell window to remain unobstructed. They could have conducted adequate checks. They could have responded when Benjamin papered over or obstructed his cell. They failed to take these basic steps.

45.    Had Defendants conducted adequate checks, maintained visibility into Benjamin's cell, removed paper or other obstruction materials, responded to his request for mental-health care, placed him on suicide precautions, or moved him to a safer setting, Benjamin's suicide attempt would have been prevented or interrupted before he suffered fatal injury.

46.     Benjamin survived the initial hanging but suffered catastrophic injury. He was transported to the hospital and admitted after the June 27, 2024 suicide attempt. He did not regain meaningful brain function.

47.     On July 1, 2024, hospital medical staff determined that Benjamin had no brain activity and was brain dead. At approximately 3:11 p.m. that day, Benjamin was pronounced dead.

48.     Benjamin's death was caused by Defendants' deliberate indifference to his serious mental-health needs and to the known and substantial risk that he would die by suicide. Defendants knew Benjamin was in a dangerous custodial setting, knew he needed mental-health care, knew that covered windows and obstructed cell fronts were dangerous and prohibited, and knew that required checks were necessary to prevent suicide and self-harm.

49.     Benjamin's death was also caused by unconstitutional conditions of confinement in DSU, including inadequate monitoring, failure to maintain cell visibility, failure to remove or restrict self-harm hazards, failure to respond to papered-over windows and obstructed cell conditions, failure to provide timely mental-health intervention, and failure to protect Benjamin from known and obvious risks of suicide.

50.     Defendants acted with deliberate indifference to Benjamin's health and safety. Defendants knew that Benjamin was confined in segregation, knew that he required mental-health care and protection from self-harm, knew that obstructed cell visibility and inadequate checks created an obvious risk of suicide, and had the authority and ability to intervene. Defendants nevertheless failed to take constitutionally required measures to protect Benjamin, including timely mental-health intervention, suicide precautions, adequate observation, removal of obstruction materials, and adequate security checks.

## COUNT I

## 42 U.S.C. § 1983 – Eighth Amendment – Deliberate Indifference to Serious Medical Needs

## (Against All Individual Defendants)

51.     Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

52.     At all relevant times, Benjamin was incarcerated in ODOC custody and was protected by the Eighth Amendment to the United States Constitution.

53.     Benjamin had serious mental health needs. His psychological distress, emotional decompensation, requests for BHS, placement in disciplinary segregation, and conduct in obstructing visibility into his cell created an obvious and substantial risk that he would attempt suicide or otherwise seriously harm himself.

54.     Defendants knew that prisoners housed in disciplinary segregation face heightened risks of psychological deterioration, suicide, and self-harm. Defendants also knew that requests for mental-health care, visible emotional distress, crying, isolation, covered cell windows, obstructed cell fronts, accumulated paper, and interference with staff observation are warning signs that require prompt intervention.

55.     Defendants knew that Benjamin was confined in DSU, that he needed mental-health attention, and that his condition and circumstances presented a substantial risk of serious harm. Defendants also knew that maintaining visibility into Benjamin's cell, conducting adequate checks, responding to blocked or papered-over windows, and providing timely BHS intervention were necessary to protect him from self-harm.

56.     Defendants were deliberately indifferent to Benjamin's serious mental-health needs and to the substantial risk that he would attempt suicide. Defendants failed to provide

timely BHS intervention, failed to conduct a timely suicide-risk assessment, failed to place Benjamin on suicide precautions, failed to move him to a safer or camera-monitored cell, failed to remove materials that could be used to obstruct observation or facilitate self-harm, and failed to ensure that Benjamin was adequately monitored.

57.     Defendants further failed to respond when Benjamin obstructed visibility into his cell by papering over or otherwise covering the cell window and obstructing the cell front or door area. Those conditions violated basic segregation-safety rules and created an obvious risk that staff could not determine whether Benjamin was alive, breathing, responsive, or safe. Defendants disregarded that risk.

58.     Defendant Lieutenant Steven Bennett was responsible for the supervision and safe operation of special housing, including DSU. Defendant Bennett failed to ensure that Benjamin was adequately monitored, failed to ensure that DSU staff maintained visibility into Benjamin's cell, failed to ensure that required checks were performed and accurately documented, failed to ensure that obvious suicide-risk indicators were addressed, and failed to ensure that Benjamin received timely mental-health intervention.

59.     Defendant Officer Tyler Winegar was assigned to DSU and was responsible for conducting tier checks and monitoring prisoners housed in segregation. Defendant Winegar failed to ensure that Benjamin was adequately observed, failed to respond to obstructed visibility and other obvious warning signs, and failed to protect Benjamin from the known and substantial risk of self-harm.

60.     Defendant Sergeant Monte McBeth and Defendant Sergeant Gee worked in, supervised, or were responsible for DSU during the relevant period. They failed to ensure that required DSU checks were actually conducted and accurately documented, failed to ensure that

PAGE 14 – COMPLAINT

staff maintained visibility into Benjamin's cell, failed to correct papered-over or obstructed cell conditions, and failed to protect Benjamin from obvious suicide-risk indicators.

61.    Defendant Officer James "Jay" Shaffer interacted with Benjamin after his disciplinary hearing on June 27, 2024. Defendant Shaffer knew that Benjamin was visibly distraught, emotionally decompensating, and requesting mental-health assistance. Defendant Shaffer failed to obtain timely BHS intervention, failed to ensure that Benjamin was assessed for suicide risk, and failed to ensure that Benjamin was placed on appropriate precautions before he was returned to or left in DSU.

62.    Defendant BHS Manager Gates and Defendant BHS Employee Tracy Meyer knew Benjamin, knew his mental-health history, and knew that he needed mental-health care. They failed to provide timely assessment, treatment, crisis intervention, suicide-risk evaluation, continuity of care, and protective recommendations to custody staff.

63.    Defendants Highberger, Wagner, Mullen, and Doe Supervisors knew that DSU housed prisoners at heightened risk of suicide and self-harm, and knew that DSU staff were required to conduct adequate checks, maintain visibility, respond to papered-over windows and obstructed cells, and obtain mental-health intervention for prisoners in crisis. These Defendants failed to train, supervise, manage, and discipline staff adequately, and failed to ensure that practices in DSU protected Benjamin from known and obvious risks of suicide.

64.    Defendants' conduct was objectively unreasonable and deliberately indifferent to Benjamin's serious mental-health needs and substantial risk of suicide. Defendants knew of and disregarded an excessive risk to Benjamin's health and safety.

65.    As a direct and foreseeable result of Defendants' deliberate indifference, Benjamin attempted suicide by hanging in cell DS-30B on June 27, 2024. He was found ashen,

PAGE 15 – COMPLAINT

limp, pulseless, not breathing, and unresponsive. He suffered catastrophic injury, was transported to the hospital, was later determined to have no brain activity, and was pronounced dead on July 1, 2024.

66.    Defendants' deliberate indifference caused Benjamin to suffer conscious pain, fear, emotional distress, loss of life, and death.

67.    Plaintiff is entitled to recover all damages available under 42 U.S.C. § 1983 and applicable survival law, including damages for Benjamin's pre-death pain, suffering, fear, emotional distress, loss of life, and other damages permitted by law, together with attorney fees and costs under 42 U.S.C. § 1988.

68.    Defendants acted intentionally, recklessly, maliciously, with deliberate indifference, and in conscious disregard of Benjamin's federally protected rights. Plaintiff is therefore entitled to punitive damages against the individual Defendants in an amount to be determined by the jury.

## COUNT II

## 42 U.S.C. § 1983 – Eighth Amendment – Unconstitutional Conditions of Confinement

## (Against All Individual Defendants)

69.    Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

70.    At all relevant times, Benjamin was incarcerated in ODOC custody and was protected by the Eighth Amendment to the United States Constitution.

71.    Defendants were required to provide Benjamin with conditions of confinement that did not expose him to an unreasonable and substantial risk of serious harm, including the risk of suicide and self-harm while housed in disciplinary segregation.

72.    Defendants knew that DSU was an isolating and restrictive environment. Defendants also knew that people housed in disciplinary segregation are at increased risk of psychological deterioration, suicide, and self-harm, and that those risks require adequate monitoring, unobstructed visibility, timely mental-health intervention, and removal of obvious suicide hazards.

73.    The conditions under which Defendants confined Benjamin in DSU were unsafe and unconstitutional. Defendants left Benjamin alone in a segregation cell after he had displayed signs of psychological distress and requested mental-health assistance. Defendants failed to place Benjamin in a safer or camera-monitored cell, failed to provide enhanced observation, failed to place him on suicide precautions, and failed to ensure timely BHS intervention.

74.    Defendants also allowed Benjamin to remain in a cell with paper and other materials that he used to obstruct staff observation and delay entry into the cell. Benjamin papered over or otherwise obstructed the cell window and obstructed the cell front or door area. These conditions prevented staff from adequately observing Benjamin and created an obvious danger that he could harm himself without timely detection or intervention.

75.    Maintaining visibility into segregation cells is a basic safety requirement. Covered windows, obstructed cell fronts, accumulated paper, and blocked doors are obvious violations of segregation-safety rules and obvious warning signs of potential self-harm. Defendants knew or should have known that these conditions required immediate correction.

76.    Defendants failed to correct those conditions. They failed to remove the paper and other materials from Benjamin's cell, failed to ensure that his cell window remained unobstructed, failed to ensure that staff could adequately observe him, failed to conduct adequate checks, and failed to move him to a safer setting.

77. Defendants also failed to ensure that required DSU checks were actually conducted and accurately documented. The failure to conduct adequate checks in segregation created a substantial risk that Benjamin would remain unobserved long enough to attempt suicide.

78. Defendant Lieutenant Steven Bennett, Defendant Officer Tyler Winegar, Defendant Sergeant Monte McBeth, Defendant Sergeant Gee, and Doe DSU Officers were responsible for the direct supervision, monitoring, and safety of prisoners housed in DSU. These Defendants failed to maintain safe cell conditions, failed to maintain visibility into Benjamin's cell, failed to correct papered-over or obstructed cell conditions, failed to conduct adequate checks, and failed to protect Benjamin from obvious risks of self-harm.

79. Defendants Highberger, Wagner, Mullen, and Doe Supervisors were responsible for the operation, staffing, training, supervision, and management of DSU. These Defendants knew that unsafe DSU practices, inadequate checks, covered windows, failure to maintain cell visibility, and delayed mental-health intervention created substantial risks of suicide and self-harm. They failed to ensure that DSU was operated in a manner that protected Benjamin from those known and obvious risks.

80. Defendants' acts and omissions deprived Benjamin of the minimal civilized measure of life's necessities, including reasonable safety, adequate supervision, and protection from known and obvious risks of suicide and self-harm.

81. Defendants acted with deliberate indifference to Benjamin's health and safety. They knew of and disregarded an excessive risk that Benjamin would seriously harm himself while housed in DSU under unsafe conditions.

PAGE 18 – COMPLAINT

82.     As a direct and foreseeable result of Defendants' unconstitutional conditions of confinement, Benjamin attempted suicide by hanging in cell DS-30B on June 27, 2024. He suffered catastrophic injury, was transported to the hospital, was later determined to have no brain activity, and was pronounced dead on July 1, 2024.

83.     Defendants' unconstitutional conduct caused Benjamin to suffer conscious pain, fear, emotional distress, loss of life, and death.

84.     Plaintiff is entitled to recover all damages available under 42 U.S.C. § 1983 and applicable survival law, including damages for Benjamin's pre-death pain, suffering, fear, emotional distress, loss of life, and other damages permitted by law, together with attorney fees and costs under 42 U.S.C. § 1988.

85.     Defendants acted intentionally, recklessly, maliciously, with deliberate indifference, and in conscious disregard of Benjamin's federally protected rights. Plaintiff is therefore entitled to punitive damages against the individual Defendants in an amount to be determined by the jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nan L. Bucknell, Personal Representative of the Estate of Benjamin Leland Bucknell, respectfully requests that judgment be entered in her favor and against Defendants, and that the Court award the following relief:

A. Economic and noneconomic damages in an amount to be determined by the jury for the violation of Benjamin Leland Bucknell's rights under the Eighth Amendment to the United States Constitution;

PAGE 19 – COMPLAINT

B. Damages available under 42 U.S.C. § 1983 and applicable survival law, including damages for Benjamin's conscious pain, suffering, fear, emotional distress, loss of life, and other injuries caused by Defendants' unconstitutional conduct;

C. Punitive damages against the individual Defendants in an amount to be determined by the jury;

D. Reasonable attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988 and any other applicable law;

E. Costs and disbursements incurred in this action;

F. Prejudgment and post-judgment interest as allowed by law; and

G. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and issues so triable.

DATED: June 29, 2026

SNYDER, POST & BURGESS

*/s/ John Burgess*
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
Tel: (971) 442-9303
Attorneys for Plaintiff

PAGE 20 – COMPLAINT